```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION
```

| | |
|---|---|
| MICHELLE D. GREENFIELD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 1:17-CV-328-TLS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| ACTING COMMISSIONER OF THE | ) |
| SOCIAL SECURITY | ) |
| ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Michelle D. Greenfield seeks review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying her application for disability and disability insurance benefits. The Plaintiff argues that the Commissioner wrongfully denied her Social Security Disability benefits and erred by failing to adequately consider the combined effects of her impairments, failing to properly weigh the opinion of a state consultative examiner, and overemphasizing her daily living activities.

**BACKGROUND**

On May 11, 2014, the Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on November 22, 2013. (R. 14.) Her claim was denied initially on August 14, 2014, and upon reconsideration on February 11, 2015. (*Id.*) On July 20, 2016, the Plaintiff appeared with counsel and testified at a hearing before an administrative law judge (ALJ), along with her boyfriend, Jonny Kline. (*Id.*) Mark A. Anderson, a vocational expert (VE), also appeared and testified at the hearing. (*Id.*) On August 25, 2016,

the ALJ denied the Plaintiff's application, finding she was not disabled as of her alleged onset date. (R. 14–30.) On June 9, 2017, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied the Plaintiff's request for review of the ALJ's decision. (R. 1–4.)

On August 3, 2017, the Plaintiff filed this claim in federal court against the Acting Commissioner of the Social Security Administration.

## THE ALJ'S FINDINGS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ found that the Plaintiff has been unable to engage in SGA since her alleged onset date, November 22, 2013. (R. 16.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting her ability to do basic work activities under § 404.1520(c). In this case, the ALJ determined that the Plaintiff had multiple severe impairments, including lumbar degenerative disc disease, status post decompression and fusion; cervical degenerative disc disease; history of left leg phlebitis;

fibromyalgia; obesity; depression; and anxiety. (*Id*.) The ALJ found that these impairments caused more than minimal limitations in the Plaintiff's ability to perform the basic mental and physical demands of work. (*Id.*) The ALJ found that the Plaintiff's other alleged impairments, including hypothyroidism, were not severe impairments. (R. 16–17.)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of the [the] listings in appendix 1 . . . ." § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things she can still do physically, despite her limitations—to determine whether she can perform "past relevant work," § 404.1520(a)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

The ALJ determined that the Plaintiff's impairments did not meet or equal any of the listings in Appendix 1, although she had moderate difficulties in social functioning and moderate difficulties regarding concentration, persistence, and pace, and that she had the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except:

> No climbing; no more than occasional balancing, stooping, kneeling, crouching, or crawling; no occupations requiring concentrated exposure to hazardous, moving machinery or walking on slick or uneven surfaces; cannot engage in complex or detailed tasks, but remains capable of performing simple, routine tasks throughout the workday; and, no more than superficial relations with coworkers, supervisors, and others.

(R. 19.)

After analyzing the record, the ALJ concluded that the Plaintiff was not disabled as of her alleged onset date. The ALJ evaluated the objective medical evidence and the Plaintiff's subjective complaints and found that the Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. (R. 20.) But, the ALJ found that the Plaintiff's testimony and prior statements about the intensity, persistence, and limiting effects of these symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (R. 21.) The Plaintiff testified that she experiences pain "everywhere," but that it is "greatest in her back, hips, legs, and between her shoulder blades" and that "she experiences numbness and tingling in her arms and hands on a daily basis." (R. 20.) The Plaintiff stated that she is able to walk "maybe" one block, that she can stand 10 to 15 minutes, and that she can sit for 30 minutes "if that." (*Id.*) She also testified that "she becomes stressed out easily due to severe anxiety and depression" and that past panic attacks had been triggered by crowds and stressful jobs. (*Id.*) The Plaintiff testified that she does laundry and cares for her children but that she must take breaks and that her children help her. (*Id.*) She stated that she was limited to driving one-half hour due to her legs and that she cooks easy meals. (*Id.*) She stated that she and her boyfriend had attended a wedding as well as a demolition derby the weekend prior to the hearing. (*Id.*)

The ALJ then turned to the objective medical evidence and noted the generally conservative nature of her treatment as to her physical symptoms. (R. 21–26.) Turning to the alleged mental impairments, the ALJ noted that "despite allegations of significantly limiting memory loss, no memory disturbance has been noted during any visit." (R. 26.) A consultative examiner opined that the Plaintiff's "concentration and immediate and short-term memory were 'significantly' below normal, and that long-term memory was below normal," but the ALJ gave

4

this opinion little weight, finding it was not supported by treatment records or activities of daily living. (R. 27.) Moreover, the ALJ noted that "[t]he claimant was able to work despite both anxiety and depression." (*Id.*) Thus, the ALJ discounted the Plaintiff's subjective testimony regarding the intensity, persistence, and limiting effects of her symptoms, finding the Plaintiff not credible. The ALJ found that "[l]imiting the claimant to simple work tasks would accommodate any difficulties with concentration that may occur, whether due to depression, anxiety, fibromyalgia symptoms, or fatigue during period of insomnia, and limiting interactions would reduce workplace stress that may increase anxiety." (*Id.*)

The Plaintiff has past relevant work as a material handler, a semi-skilled SVP 3, heavy exertion occupation. (R. 28.) The VE indicated that the Plaintiff would be unable to perform her past relevant work based on her RFC. (*Id.*) Relying on the VE's testimony, the ALJ found that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id*.) Thus, the ALJ found that the Plaintiff was not disabled as defined in the Social Security Act as of her alleged onset date. (R. 30.)

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 308. A court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

**ANALYSIS**

The Plaintiff argues that the ALJ erred by failing to adequately consider the combined effects of her impairments, failing to properly weigh the opinion of a state consultative examiner, and overemphasizing her daily living activities.

**A.    Combined Effect of Impairments**

The ALJ stated that "[w]ith regard to concentration, persistence or pace, the claimant has moderate difficulties," although those difficulties did not meet or medically equal the severity of one of the listed impairments. (R. 18.) The ALJ considered the Plaintiff's allegations of severe anxiety and depression, her reports of decreased concentration and "fibro fog," and allegations of significantly limiting memory loss. (R. 26.) The ALJ also considered the opinion of consultative psychological examiner Dr. Boen, who opined that the Plaintiff could not concentrate or stay on task when working, that her concentration and immediate and short-term memory were "significantly" below normal, and that her long-term memory was below normal. (R. 27.) However, the ALJ assigned Dr. Boen's opinion limited weight because the ALJ agreed with other State Agency opinions that Dr. Boen's opinion was not supported by treatment records or activities of daily living. (*Id.*) The ALJ also noted that the Plaintiff had continued to work despite her anxiety and depression. (*Id.*) Thus, the ALJ found that "[l]imiting the claimant to simple work tasks would accommodate any difficulties with concentration that may occur, whether due to depression, anxiety, fibromyalgia symptoms, or fatigue during periods of insomnia, and limiting interactions would reduce workplace stress that may increase anxiety." (*Id.*)

The Seventh Circuit has "repeatedly rejected the notion that . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Yurt v. Colvin*, 758 F.3d 850, 858–59 (7th Cir. 2014); *see also Stewart v. Astrue*, 561 F.3d 679, 985 (7th Cir. 2009) (noting repeated rejection of the contention that "restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public" accounts for limitations in concentration, persistence, and pace); *Craft*, 539 F.3d at 677–78 (restriction to unskilled, simple work insufficient to account for difficulties with memory, concentration, and mood swings). Because in step three the ALJ determined that the Plaintiff had moderate difficulties with concentration, persistence, and pace, the RFC does not properly account for all of the Plaintiff's limitations.

"The failure to address . . . cognitive limitations when assessing [the Plaintiff's] RFC is a critical defect in the ALJ's decision because even mild cognitive limitations seemingly could alter the ultimate conclusion on disability with respect to a skilled occupation." *Verlee v. Colvin*, No. 1:2-CV-45, 2013 WL 6063243, at *4 (N.D. Ind. Nov. 18, 2013). The ALJ reasoned that limiting the Plaintiff to "simple work tasks would accommodate any difficulties with concentration," whatever the source. (R. 27.) But, this limitation refers only to the complexity of the task. "[L]imitations on the *difficulty* of tasks are completely different from and do not address an individual's limitations on the ability to *sustain* work." *Gamble v. Comm'r of Soc. Sec.*, No. 1:14-cv-239, 2015 WL 5730703, at *12 (N.D. Ind. Sept. 30, 2015) (citing *Varga v. Colvin*, 794 F.3d 809, 814–15 (7th Cir. 2015)) (emphasis in original); *see also Anglemyer v. Berryhill*, No. 3:16-CV-167, 2017 WL 3484743, at *3 (N.D. Ind. Aug. 15, 2017) (noting that "limiting the complexity of a task does not address an individual's ability to continue performing the task over

an extended period of time," and finding that the limitations at issue "dealt 'largely with workplace adaptation, rather than concentration, pace, or persistence'" (first quoting *Varga*, 794 F.3d at 814–15, then citing *O-Conner-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010)). Having found that the Plaintiff had moderate difficulties in concentration, persistence, and pace, the ALJ needed to include limitations relating to the Plaintiff's ability "to sustain focused attention and concentration [as it] relates to the length of time to learn a job" or build a logical bridge explaining why such limitations are unnecessary. *Robinson v. Colvin*, No. 2:12-CV-450, 2014 WL 1316947, at *7 (N.D. Ind. Mar. 28, 2014); *see also Misener v. Asture*, 926 F. Supp. 2d 1016, 1036 (N.D. Ind. 2013) (remanding where the ALJ found "moderate" limitations in concentration, persistence, and pace, but did not include adequate limitations in RFC despite limiting claimant to "unskilled work").

Moreover, the Seventh Circuit has "stated repeatedly that ALJs must provide vocational experts with a complete picture of a claimant's residual functional capacity, and vocational experts must consider deficiencies of concentration, persistence, and pace." *Jelinek v. Astrue*, 662 F.3d 805, 813 (7th Cir. 2011). When the ALJ posed a hypothetical to the vocational expert regarding the existence of other jobs of sufficient number in the economy that the Plaintiff could perform, the ALJ referenced only the limitations in the RFC and the "limitations consistent with the testimony" and did not reference the fact that the Plaintiff had difficulties with concentration, persistence, and pace. "The hypothetical must account for both the complexity of the tasks and the claimant's ability to stick with a task over a sustained period." *Warren v. Colvin*, 565 F. App'x 540, 544 (7th Cir. 2014). Although the VE referenced the Plaintiff's ability to concentrate, there was no discussion of limitations related to persistence or pace. The hypothetical question, therefore, was "fundamentally flawed."

9

"When the hypothetical question is fundamentally flawed because it is limited to the facts presented in the question and does not include all of the limitations supported by medical evidence in the record, the decision of the ALJ that a claimant can adjust to other work in the economy cannot stand." *Young v. Barnhart*, 362 F.3d 995, 1005 (7th Cir. 2004). Thus, the Court must remand this case for further consideration. On remand, the ALJ should ensure that any limitations found to exist are adequately incorporated into the Plaintiff's RFC and that any hypotheticals posed to a vocational expert adequately apprise the expert of each limitation.

**B.     Daily Living Activities**

The Plaintiff further argues that the ALJ placed undue weight on her ability to conduct daily living activities, particularly that she was a stay-at-home mother who was able to care for her sons and complete chores and household tasks. The Commissioner responds that the ALJ properly considered the Plaintiff's daily living activities in conjunction with all the other evidence of record.

The Seventh Circuit has emphasized that there are "critical differences between activities of daily living and activities in a full-time job" including flexibility in scheduling, possible help from family members, and lack of minimum performance standards; and "[t]he failure to recognize these differences is a recurrent . . . feature of opinions by administrative law judges in social security disability cases." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). The Commissioner correctly notes that an individual's daily activities are among the factors that an ALJ must consider in making such a determination. *See Craft*, 539 F.3d at 660.

Here, it does not appear that the ALJ fully considered the modifications and help that the Plaintiff required in order to complete the referenced daily activities. For example, the Plaintiff

testified that her sons helped with the household chores (R. 42, 48–49); that after about ten minutes of doing housework, she had to take half-hour breaks (R. 48); that her driving was limited to a half-hour at a time due to her legs (R. 42); that she has to take breaks when she shops for groceries and shops either in the morning or at night in order to avoid crowds to avoid exacerbating her anxiety (R. 43); that she needs constant reminders of things she needs to do (R. 49); and that her boyfriend carries groceries into the house for her (R. 51). Discussion of these modifications and qualifications is sparse, and it appears that the ALJ "ignored [the Plaintiff's] qualifications as to *how* [s]he carried out those activities." *Craft*, 539 F.3d at 680 (emphasis in original). Courts have repeatedly found fault with decisions where an ALJ noted that the claimant could perform daily activities but failed to examine the physical or mental consequences of performing those activities and/or the claimant's need for assistance or modifications. *See, e.g.*, *Sneed v. Berryhill*, No. 2:16-CV-195, 2017 WL 4325303, at *3 (N.D. Ind. Sept. 29, 2017) ("If the ALJ wishes to hold Plaintiff's daily activities against her, he must . . . discredit Plaintiff's claims of how much her children help with the activities."); *Herrold v. Colvin*, No. 2:13-CV-360, 2015 WL 1243293, at *6 (N.D. Ind. Mar. 17, 2015) ("[T]he Seventh Circuit has repeatedly criticized credibility determinations that are based on a plaintiff's ability to take care of his personal hygiene, children, or household chores.") (citing *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009)); *Blow v. Astrue*, No. 1:11-CV-293, 2012 WL 3233621, at *9 (N.D. Ind. Aug. 6, 2012) (finding improper reliance on daily activities when others performed almost all of the household chores and any activities the claimant could perform were at a slower pace with frequent breaks); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248–49 (6th Cir. 2007) (finding fault where the ALJ "fail[ed] to examine the physical effects coextensive with [the] performance" of daily activities and "failed to note or comment upon the fact that [the

11

claimant] receive[d] assistance of many everyday activities and even personal care from her children").

To the extent that the ALJ based the credibility determination on the Plaintiff's ability to engage in daily living activities without taking into account the qualifications on the Plaintiff's ability to perform them, the Court remands this case to the ALJ.

## CONCLUSION

Accordingly, the Court REVERSES and REMANDS this case. Because the Court is remanding on these issues, it need not consider the reminder of the parties' arguments.

SO ORDERED on April 3, 2018.

                                           s/ Theresa L. Springmann
                                          CHIEF JUDGE THERESA L. SPRINGMANN
                                          UNITED STATES DISTRICT COURT